IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION


ROMAR ELEVATORS, INC.        )
                                     )
     Appellant               )
                                     )
v.                                 )     Civil Action No. 4:09CV00008
                                   )
ROBIN GARRETT TOMER        )     Case No. 08-61265
                                   )
     Appellee               )


### BRIEF OF THE APPELLANT

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION


Darren W. Bentley (VSB #48092)
CLEMENT & WHEATLEY
P.O. Box 8200
Danville, VA 24543-8200

Counsel for Appellant



Lewis E. Goodman, Jr. (VSB # 13280)
520 Piney Forest Rd
Danville, VA 24540

Counsel for Appellee

TABLE OF CONTENTS

TABLE OF CONTENTS.................................................... 2

TABLE OF AUTHORITIES................................................. 4

Basis of Appellate Jurisdiction..................................... 6

Statement of Issues Presented....................................... 6

The Standard of Appellate Review.................................... 7

Statement of the Case............................................... 8

    A.     *Nature of the Case and Proceedings Below*.................. 8
    B.     *Statement of Facts*....................................... 9

Summary of the Argument............................................. 12

Argument............................................................ 18

*I. The Bankruptcy Court did not Apply the Proper Legal Standard in its Determination that Tomer Filed her Bankruptcy Petition in Good Faith, therefore, the Court Must Review this Issue De Novo.* ..................... 18

    *A....... The Legal Standard under § 1325(a)(7) is the Totality of Circumstances Test as Applied when Examining Issues of Good Faith under § 1307(c)*.......................................................... 18

    *B....... The Bankruptcy Court did not Examine Tomer's Conduct by Conducting a Fact-intensive Inquiry that Considered the Totality of Circumstances as Was Required.* ...................................... 20

*II. The Bankruptcy Court Misapplied the Legal Standard in Finding that Tomer's Plan was Proposed in Good Faith.* ............................... 20

    *A........ The Legal Standard under § 1325(a)(3) is a Totality of Circumstances Test and Tomer Rather than the Trustee had the Burden of Proving that the Plan was Proposed in Good Faith.* ....................... 21

    *B....... The Bankruptcy Court did not Examine Tomer's Conduct by Conducting a Fact-intensive Inquiry that Considered the Totality of Circumstances as was Required.* ...................................... 21

*III. Tomer's Pre-petition and Post-petition Actions Clearly Demonstrate that Both her Bankruptcy Petition and Plan Were Filed in Bad Faith.* ....... 23

*A. .... When Conducting the Totality of Circumstances Test Factors Listed in Dean and Neufeld Should be Evaluated as they Apply to the Facts of the Case at Bar.* .......................................................... 23

*B. ..... Tomer has Demonstrated her Bad Faith through Several Pre-petition and Post-petition Actions.* ...................................... 23

1.   *The Plan's proposed payment of Romar's claim is insignificant in light of the fact that the claim was incurred by Tomer's intentional misappropriation of Romar's trade secrets.* .................... 23

2.   *This bankruptcy case involves a two-party dispute between Tomer and Romar and as such a case dismissal for lack of good faith is warranted.* ............................................................. 25

3.   *Tomer committed an act of bad faith when she fraudulently transferred Property to her father-in-law with his aid and assistance to avoid Romar's judgment lien attaching to her Property.* ................... 27

4.   *Tomer committed an act of bad faith when she purchased a new Vehicle within a week of filing her Petition.* ....................... 28

IV. *Tomer's bankruptcy case should be dismissed pursuant to 11 U.S.C. 1307(c) for her bad faith actions in filing her bankruptcy petition and plan.* .............................................................. 29

Conclusion. .......................................................... 29

TABLE OF AUTHORITIES

## Cases

Deans v. O'Donnell (In re Deans), 692 F.2d 968, 969 (4th Cir. 1982) 19, 21, 23

Gilbane Building Company v. Federal Reserve Bank of Richmond, 80 F.3d 895, 905 (4th Cir. 1996).......................................................... 7

In re Abbas, 2007 WL 4556665, *5 (Bankr. E.D.Va. 2007)...................... 19

In re Anderson Oaks L.P., 77 B.R. 108, 112 (Bankr. W.D.Tex. 1987).......... 25

In re Aprea, 368 B.R. 558, 566 (Bankr. E.D.Tex. 2007)...................... 18

In re Bateman, 515 F.3d 272, 283 (4th Cir. 1982) ...................... 19, 25

In re Bland, 2008 WL 2002647, *2 (Bankr. N.D.W.Va. 2008).................. 18

In re Chaney, 362 B.R. 690, 694 (Bankr. E.D.Va. 2007)...................... 21

In re Chase, 43 B.R. 739, 742 (D. Md. 1984).............................. 23

In re Danville Emergency Physicians, P.C., Case No. 06-61306-LYN (Bankr. W.D.Va. 2008) .......................................................... 26

In re Delbrugge, 347 B.R. 536, 540 (Bankr. N.D.W.Va. 2006)......... 19, 21, 25

In re Edmunds, 350 B.R. 636, 648 (Bankr. D.S.C. 2006).................. 22, 25

In re Fleury, 294 B.R. 1, 8 (Bankr. D.Mass. 2003)........................ 26

In re Herndon, 218 B.R. 821, 825, n. 5 (Bankr. E.D.Va. 1998).............. 24

In re Kasun, 186, B.R. 62, 63-64 (Bankr. E.D.Va. 1995)..................... 28

In re Kestell, 99 F.3d 145, 148 (4th Cir. 1996) ........................ 19

In re Love, 957 F.2d 1350 (7th Cir. 1992) .............................. 19

In re Mark, 336 B.R. 260, 266 (Bankr. D. Md. 2006)........................ 25

In re Mattson, 241 B.R. 629, 634 (Bankr. D. Minn. 1999).................. 26

In re McNeely, 366 B.R. 542, 549 (Bankr. N.D.W.Va. 2007).................. 28

In re Mercer, 246 F.3d 391, 402 (5th Cir. 2001) ..................... 7, 20

In re Missionary Baptist Foundation of America, 712 F.2d 206, 209 (5th Cir. 1983) .................................................... 7, 20

In re Official Committee of Unsecured for Dornier Aviation, Inc., 453 F.3d 225, 231 (4th Cir. 2006)........................................... 7

In re Oliver, 186 B.R. 403, 406 (Bankr. E.D.Va. 1995)..................... 24

In re Peterson, 228 B.R. 19 (Bankr. M.D.Fla 1998)........................ 26

In re Ramji, 166 B.R. 288, 2909 (Bankr. S.D.Tex. 1993).................... 26

In re Russell, 348 B.R. 441, 447 (Bankr. S.D.Tex. 2006)................... 29

In re Sellers, 285 B.R. 769, 773, fn. 4 (Bankr. S.D.Ga. 2001)............. 22

In re Shafer, 393 B.R. 655, 659 (Bankr. W.D.Wis. 2008).................... 18

In re Shead, 2008 WL 1995373 at *2.................................... 25, 29

In re Stanley, 224 Fed.Appx. 343, 345-346, 2007 WL 1026423, 2 (5th Cir. 2007) ...................................................... 7, 20

In re Tornheim, 239 B.R. 677, 686-87 (Bankr. E.D.N.Y. 1999)............... 26

In re Torres Martinez, 397 B.R. 158, 165 (B.A.P. 1st Cir.2008)............ 18

In re Virden, 279 B.R. 401, 410 (Bankr. D.Mass. 2002).................... 26

In re Walker, 99 F.3d 146, 148 (4th Cir. 1996) ..................... 25, 29

In re Zaleski, 216 B.R. 425, 432 (1997).................................. 28

Neufeld v. Freeman, 794 F.2d 149, 152 (4th Cir. 1986) ......... 19, 21, 23, 24

Solomon v. Cosby (In re Solomon), 67 F.3d 1128, 1134 (4th Cir. 1995) ....... 21

United States v. Latouf, 132 F.3d 320, 331 (6th Cir. 1997) ................. 7

## Statutes

```
11 U.S.C. § 105.................................................... 8, 17, 29
11 U.S.C. § 1307(c)............................................ 8, 17, 18, 19, 29
11 U.S.C. § 1325(a)............................................... 8, 16-21, 23
28 U.S.C. § 158(a)................................................ 6
```

**Rules**

```
Fed. R. Bankr. P. 8013............................................ 7
```

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

ROMAR ELEVATORS, INC.       )
                                   )
      Appellant          )
                                   )
v.                             )     Civil Action No.  4:09CV00008
                                   )
ROBIN GARRETT TOMER        )     Case No. 08-61265
                                   )
      Appellee           )

<u>BRIEF OF THE APPELLANT</u>

<u>Basis of Appellate Jurisdiction</u>

This Court has appellate jurisdiction in this appeal from a final order of the Bankruptcy Court for the Western District of Virginia, Lynchburg Division ("bankruptcy court") pursuant to 28 U.S.C. § 158(a).

<u>Statement of Issues Presented</u>

1.    Whether the bankruptcy court failed to apply the proper legal standard in finding that the action of the Debtor/Appellee, Robin Garrett Tomer ("Tomer"), in filing her bankruptcy petition ("Petition") was in good faith.

2.    Whether the bankruptcy court misapplied the legal standard in finding that Tomer's First Amended Chapter 13 Plan ("Plan") was proposed in good faith.

3.    Whether the bankruptcy court erred in finding that the action of Tomer in filing her Petition was in good faith.

4.     Whether the bankruptcy court erred in finding that Tomer's Plan was proposed in good faith.

5.     Whether the bankruptcy court erred in confirming Tomer's Plan rather than dismissing Tomer's bankruptcy case for her bad faith actions.

## The Standard of Appellate Review

On appeal, this Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.  This Court "reviews the bankruptcy court's legal determinations *de novo* and its factual findings for clear error."  In re Official Committee of Unsecured for Dornier Aviation, Inc., 453 F.3d 225, 231 (4th Cir. 2006).  In cases where the issues present mixed questions of law and fact, the court will apply the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts.  Gilbane Building Company v. Federal Reserve Bank of Richmond, 80 F.3d 895, 905 (4th Cir. 1996).  Findings of fact are clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.  United States v. Latouf, 132 F.3d 320, 331 (6th Cir. 1997). Whether a petition was filed in good faith is a question of fact that is reviewed for clear error. "When a finding of fact is premised on an improper legal standard, or a proper one improperly applied," however, that finding is reviewed *de novo*." In re Stanley, 224 Fed.Appx. 343, 345-346, 2007 WL 1026423, 2 (5th Cir. 2007)(quoting In re Missionary Baptist Foundation of America, 712 F.2d 206, 209 (5th Cir. 1983); see also In re Mercer, 246 F.3d 391, 402 (5th Cir. 2001)("[T]he clear error standard does not apply to

findings of fact resulting from application of an incorrect legal standard.").

## Statement of the Case

A.   *Nature of the Case and Proceedings Below.*

Romar brought this action against Tomer, to have her Chapter 13 bankruptcy case dismissed in accordance with §§ 105, 1307(c), and 1325(a) of the United States Bankruptcy Code ("Code"), because Tomer's Chapter 13 plan was not proposed in good faith and because Tomer's action in filing the Petition was not done in good faith.

On May 30, 2008, Tomer filed her Petition and original Chapter 13 plan ("Original Plan"), in the United States Bankruptcy Court for the Western District of Virginia, Lynchburg Division ("bankruptcy court").

On June 20, 2008, the Appellant, Romar Elevators, Inc. ("Romar") filed an Objection to Confirmation of Tomer's Original Plan ("Objection") alleging that the Original Plan was not proposed in good faith and that Tomer's actions in filing the petition were not in good faith.

The confirmation hearing on Tomer's Original Plan was heard on July 30, 2008, and continued to October 1, 2008.  Tomer filed her amended Plan on August 8, 2009.

Confirmation hearings on the Tomer's Plan and Romar's Objection were held on October 1, 2008, and again on December 3, 2008, after which the bankruptcy court took the matter under advisement.

On February 6, 2009, the bankruptcy court issued its Memorandum and Order overruling Romar's Objection and confirming Debtor's Plan (Memorandum and Order).  Romar now appeals from this decision.

B.   *Statement of Facts.*

Tomer worked for Romar from February 2006 to March 23, 2007.  Tomer was employed by Romar as a rehabilitation specialist in its medical equipment business. Tomer's job duties included sales and retrofitting power wheelchairs for Romar's customers (Record on Appeal ("R"), Appeal Index Number 16, ¶6). During this period of employment, Romar entrusted its records to Tomer subject to an express agreement, which limited Tomer's use of the records (R.16, ¶7).  Tomer tendered her resignation to Romar on March 23, 2007, after accepting employment with Romar's principal competitor, Commonwealth Home Health Care (R.16, ¶8).  The night before she quit, Tomer entered Romar's office using the key and password Romar had entrusted to her, logged into Romar's network, and transferred Romar's proprietary information and patient records to her personal Yahoo! account (R.16, ¶9).  When Romar learned of Tomer's actions, it filed suit against her in the Danville Circuit Court of the Commonwealth of Virginia (R.16, ¶12).  A jury rendered its verdict on February 14, 2008, finding Tomer liable to Romar for damages in the net amount of $171,000 for her misappropriation of Romar's trade secrets in violation of the Virginia Uniform Trade Secrets Act (R.27, p. 8, ll. 196-208).  The judgment order ("Judgment") was entered thereafter on April 7, 2008 (R.6, SOFA p. 3, ¶4).

Prior to the Judgment being entered, but after the jury rendered its verdict, Tomer and her husband, Adam Tomer, transferred their ownership interest in and to their home, located at 444 Woodlawn Drive, Danville, Virginia ("Property"), to Tomer's father-in-law, John C. Tomer, for the loan payoff amount of approximately $91,000 (R.6, SOFA p. 5, ¶10, R.23, Exs. B-D).

Tomer and her husband had purchased the Property prior to being married for approximately this same amount in June 2004, and the Property was held by them as joint tenants rather than as husband and wife (R.25, R.26, p. 2, p. 25, ll. 12-25).  Tomer's half-interest in the Property would have been subject to Romar's post-judgment lien.  Tomer stated that she transferred the Property to her father-in-law, because she knew that if she did not sell the Property her half of it would be subject to the Judgment (R.26, p. 36, ll. 3-25, R.27, p. 10, ll. 270-274, p. 20, ll. 542-554, p. 25, ll. 685-693).  Tomer now rents the Property from her father-in-law for $775 per month (R.7, SOFA, ¶3).

Tomer completed credit counseling for purposes of filing bankruptcy on May 15, 2008 (R.1, docket item number 4, R.6, SOFA, p. 5, ¶9).  Tomer knew that she was going to be filing a Chapter 13 bankruptcy when she applied for a vehicle loan with Piedmont Credit Union on or about May 20, 2008 (R.20, R.27, p. 27, ll. 733-750, p. 28, ll. 751-753).  On May 22, 2008, Tomer purchased a new 2008 Toyota Yaris ("Vehicle") from Danville Toyota (R.20, R.26, p. 23, l. 25, p. 24, ll. 1-9). The Vehicle loan was made by Piedmont Credit Union (R.20).  Tomer's father-in-law cosigned and guaranteed the loan, but the vehicle is titled solely in Tomer's name (R.20).  Tomer already owned a 2004 Hyundai jointly with her husband prior to purchasing the new Vehicle (R.26, p.30, ll. 19-25, p. 31, ll. 1-6).  Tomer states that she needed another vehicle because her husband works and has a different schedule from hers.  Tomer also stated that her employer provides her with a vehicle for use during work, but that she is not permitted to use the work vehicle to travel to and from her home (R.26, p. 34, ll. 1-3).  Adam Tomer's only employment is, and was for some time prior to Tomer's bankruptcy, part-time work as a Councilman for the City of Danville (R.26, p. 31, ll. 1-25, p. 32,

ll. 1-25, p. 40, ll. 5-25, p. 41, ll. 1-20).  The monthly payment on the Vehicle loan is $390 per month (R.11, ¶5).

On May 30, 2008, Tomer filed her bankruptcy petition, bankruptcy schedules and Plan (R.1).  Tomer stated that the only reason she filed her Chapter 13 bankruptcy petition was because of the Judgment (R. 26, p. 42, ll. 18-25).  Tomer did not and does not intend to pay the Judgment in full (R.26, p. 43, ll. 16-25, p. 44, ll. 1-2).  Tomer's Chapter 13 Petition is the result of a two-party dispute between herself and Romar (R.26, p. 55, ll. 21 – 25).

After Tomer filed her bankruptcy petition, and without first obtaining relief from the automatic stay, she filed a petition of appeal from the Judgment to the Supreme Court of Virginia (R.14).  On July 10, 2008, Romar filed its First Motion to Dismiss Tomer's petition for appeal with the Supreme Court of Virginia on grounds that Tomer lacked standing to petition for appeal because she had not sought relief from stay prior to filing her petition for appeal (R.14).  On July 29, 2008, in an effort to cure the defect in her Petition for Appeal, Tomer filed a Motion to Lift Stay Nunc Pro Tunc.  The bankruptcy court entered an Order on August 12, 2008 lifting the stay *nunc pro tunc*.  On August 15, 2008, Mr. Pulley requested that the bankruptcy court make an inquiry into the entry of the *nunc pro tunc* Order, which was done without the required notice or hearing, and his request was docketed as a motion to alter or amend the *nunc pro tunc* Order. On August 20, 2008, Tomer moved the bankruptcy court to reconsider and affirm the Order lifting stay *nunc pro tunc*.  A hearing was held on Tomer's motion on October 1, 2008 and the matter was taken under advisement by the bankruptcy court. On October 24, 2008, the bankruptcy court entered a Memorandum and Order denying Romar's motion to alter or amend its *nunc pro tunc* Order.

11

At the confirmation hearing held on October 1, 2008 and again on December 3, 2008, Romar argued its Objection that Tomer's Plan should not be confirmed and that Tomer's bankruptcy case should be dismissed for her bad faith actions (R.27 and docket item number 3, Transcript from December 3, 2008).

After taking the matter under advisement, the bankruptcy court issued its Memorandum and Order overruling the Romar's Objection and confirming Debtor's Plan.

<u>Summary of the Argument</u>

The bankruptcy court did not apply the correct legal standard in determining whether Tomer had filed her bankruptcy petition in good faith. The legal standard employed within the Fourth Circuit Court of Appeals when making good faith determinations adopts a totality of circumstances test, which must be examined on a case-by-case basis.  Under proper application of this test, it is the debtor that bears the burden of proving that her actions in filing the petition were made in good faith.  In this case, the bankruptcy court failed to examine the totality of circumstances in finding that the petition was filed in good faith. Instead, the bankruptcy court relied solely upon the Chapter 13 Trustee's ("Trustee") statements and the fact that the Trustee had not objected "to the confirmation of the plan on the grounds that the petition was filed in bad faith," (R.19, p. 2, ¶1).  The bankruptcy court misplaced its reliance upon the Trustee's statement that "the Debtor has proposed a plan that technically meets all of the chapter 13 requirements," (R.19, p. 2, ¶1), because the burden of establishing good faith falls to Tomer and not to the Trustee.  Therefore, this Court should review the issue of Tomer's good faith in the filing of her petition *de novo*.

12

Assuming for the sake of argument that the bankruptcy court did apply the totality of circumstances test, it is clear that the test was misapplied. While the bankruptcy court appeared to examine several issues concerning bad faith, its examination was misapplied because its consideration of the factors was done upon the presumption that if Tomer's Plan was technically sufficient there could be no bad faith in its proposal. The technical requirements for confirmation of a plan, like the means test and best-interest-of-the-creditors test, do not constitute the broad totality of circumstances that must be examined on a case by case basis in order to apply fairly the law. Furthermore, it is clear from the bankruptcy court's Memorandum and Opinion that it placed its reliance upon the Trustee's statements rather than requiring Tomer to meet her burden in proving that the Plan was filed in good faith. For these reasons as well, this Court should examine the issue of whether Tomer filed her Plan in good faith *de novo*.

Tomer's pre-petition and post-petition actions clearly demonstrate that both her bankruptcy petition and plan were filed in bad faith. Tomer's bad faith pre-petition actions include the following: (1) misappropriating her employer Romar's trade secrets just prior to taking a job with Romar's principal competitor; (2) fraudulently transferring her Property into her father-in-law's name within four days of the jury rendering a verdict finding Tomer guilty of misappropriation of trade secrets; (3) then purchasing a new Vehicle as a luxury item with the aid and assistance of her father-in-law a week prior to filing her Petition. Tomer's post-petition actions include the following: (1) filing a petition in a case that is a two-party dispute; (2) scheduling the insider claims of her father-in-law and her uncle on equal footing with legitimate unsecured claims; (3) dishonesty representing issues concerning her uncle's bill for legal services, which was created solely for

13

bankruptcy purposes; and (4) violating the automatic stay for her own benefit while employing the same stay as an appeal bond for her state court action.

Tomer misappropriated her previous employer Romar's trade secrets the day before she went to work for its principal competitor, Commonwealth Home Health Care.  Immediately after the jury found her guilty of misappropriation, but before the Judgment was entered, Tomer fraudulently transferred her Property to her father-in-law to impair Romar's ability to collect on The Judgment (R. 26, p. 36, ll. 3-25, R. 27, p. 10, ll. 270-274, p. 20, ll. 542-554, p. 25, ll. 685-693).  Then a week before she filed her bankruptcy petition Tomer purchased a new Vehicle.  This Vehicle was not necessary to the Debtor's reorganization.  It was purchased, with the help of her father-in-law's co-signature and guaranty so that she could reduce the amount of her income that would be susceptible to payment to Romar through her bankruptcy case (R. 20).  Even though her father-in-law is a co-signor and guarantor of the Vehicle note, he is not listed as a co-owner on the Vehicle title (R. 20).  The Vehicle is a luxury item purchased at Romar's expense.  The Vehicle loan requires semi-monthly payments of $195 at 17.75% interest, and it will have to be fueled, insured, and maintained (R. 20). This is money that should be applied toward paying Romar and Tomer's other legitimate unsecured creditors.  The Vehicle is not necessary to Tomer's Plan because she owns a 2004 Hyundai, her husband only works part-time and she has a company vehicle at her disposal while she is at work.

Tomer's bankruptcy case is a two-party dispute between her and Romar. Tomer by her own admission, filed her bankruptcy case for no other reason than to avoid paying Romar for the damages she had caused by her misappropriation of its trade secrets (R. 26, p. 42, ll. 18-25).  Tomer's only other substantial debts are to two insiders: (1) her father-in-law and

14

uncle who assisted her with the fraudulent transfer of her Property and helped her obtain a loan so that she could buy a new Vehicle a week before filing for bankruptcy, and (2) her uncle's law firm, Garrett & Garrett, where her father also works as an employee.  The bill from the law firm was generated exclusively for Tomer's benefit at around the time she filed her Petition, which is evidenced by the date and nature of the bill (R. 21, p. 2).  The bill is not itemized and does not show the dates that work was performed.  Rather, it is a one page summary for work performed over the course of more than a year, showing a total amount due of $68,300.  Tomer was unable to produce any evidence of any fee arrangement with Garrett & Garrett or any other billing statements with the exception of the one page summary bill created more than a year after Garrett & Garrett began representing Tomer. (R. 27, p. 24, ll. 652-658).  Garrett & Garrett's claim is nothing more than an attempt by Tomer, with the aid and assistance of an insider, to reduce the assets available to her legitimate creditors.  Romar stands out as the largest claimant by far with its claim representing in excess of 80% of the total of all legitimate noninsider claims.

Tomer's alleged debts to her father-in-law and to her uncle are debts to insiders and by her testimony were not a factor in her decision to file for bankruptcy protection (R. 26, p. 42, ll. 19-22).  Tomer never intended to pay Romar for the damages she caused it.  By her own testimony, she expects to discharge all but a small fraction of what she owes to Romar (R. 26, p. 43, ll. 22-23, p. 44, ll. 1-2).  The bankruptcy court's finding that "Debtor's payments under the Plan in this case constitute more than 19% of the total claims amount" is clearly erroneous (R. 18, p. 5, ¶2).  Under Tomer's Plan, Romar will only receive thirteen cents on the dollar for the damages wrought by Tomer's misappropriate actions (R. 13, p. 3, ¶4).  The

bankruptcy court erred in concluding that the two-party dispute factor is less important in involuntary cases than in voluntary cases. Two-party disputes such as this have no place in bankruptcy.  Tomer's confession that she only filed her petition to impede Romar's collection attempts sufficiently demonstrates her bad faith intention in filing for bankruptcy relief (R. 26, p. 42, ll. 18-25, p. 43, ll. 1-13, R. 27, p. 7, ll. 188-190, p. 8, ll. 196-208).  Her bankruptcy case is not in the best interests of her creditors.  Her petition and plan have been orchestrated with her bad faith acts solely for Tomer's benefit at the expense of her legitimate creditors, including Romar.

Tomer noted an appeal from the Judgment prior to filing for bankruptcy protection, and used the automatic stay created with the filing of her petition as if it were an appeal bond on the Judgment.  Tomer took advantage of the stay to protect herself from Romar's collection efforts pending her appeal.  While thus benefitting from the stay, Tomer concurrently violated the stay by taking post-petition actions to perfect her appeal from the Judgment without any effort to obtain relief from the automatic stay beforehand.  The bankruptcy court subsequently erased Romar's bad act by entering an order granting her relief from the stay *nunc pro tunc*.  The *nunc pro tunc* Order was granted without affording Romar any opportunity for a hearing on the matter in violation of the Federal Rules of Bankruptcy Procedure.

The bankruptcy court erred in concluding, that there is no bad faith in Tomer's chapter 13 bankruptcy case on the basis that her Plan is in technical compliance with the plan requirements of 11 U.S.C. 1325.  The bankruptcy court clearly failed to consider all of the "circumstances" and either failed to apply the totality of circumstances test or misapplied the test.  If the

16

test had been applied and applied correctly, the burden would have been on Tomer and based on the undisputed facts set forth here, she fails.  Tomer is not among the class of intended recipients entitled to bankruptcy relief. Her bad faith actions clearly demonstrate that she is not the honest but unfortunate debtor that the Bankruptcy Code contemplates providing with a fresh start.  Tomer's bankruptcy case should be dismissed pursuant to Bankruptcy Code §§ 105, 1307(c), and 1325(a) for her bad faith actions in filing her bankruptcy petition and plan.

<u>Argument</u>

    I.    *The Bankruptcy Court did not Apply the Proper Legal Standard in its Determination that Tomer Filed her Bankruptcy Petition in Good Faith, therefore, the Court Must Review this Issue De Novo.*

        A.    *The Legal Standard under § 1325(a)(7) is the Totality of Circumstances Test as Applied when Examining Issues of Good Faith under § 1307(c).*

Bankruptcy Code § 1325(a)(7), enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), added the plan confirmation requirement that "the action of the debtor in filing the petition was in good faith." This provision is applicable to Tomer's bankruptcy filing. Although there has not been much case law pertaining to the standard of review under § 1325(a)(7) the decisions that have been handed down indicate that the same good faith analysis that is applied to Bankruptcy Code § 1307(c) should be applied to § 1325(a)(7). <u>In re Torres Martinez</u>, 397 B.R. 158, 165 (B.A.P. 1st Cir.2008)(implying that the obligation of a chapter 13 debtor to commence a chapter 13 case in good faith now resides in § 1325(a)(7) rather than § 1307(c)); <u>In re Bland</u>, 2008 WL 2002647, *2 (Bankr. N.D.W.Va. 2008)(treating § 1325(a)(7) as an additional statutory basis to dismiss a bad faith chapter 13 filing); <u>In re Shafer</u>, 393 B.R. 655, 659 (Bankr. W.D.Wis. 2008)(concluding that § 1325(a)(7) "appears to be nothing more than a codification of the long-standing judge-made rule and a corollary of § 1307(c)...."); <u>In re Bland</u>, 2008 WL 2002647, at *2; <u>see also</u> <u>In re Aprea</u>, 368 B.R. 558, 566 (Bankr. E.D.Tex. 2007). (treating § 1325(a)(7) as an additional statutory basis to dismiss a bad faith chapter 13 filing.

Under § 1307(c), a court determines bad faith by conducting a case-by-case, fact-intensive inquiry that considers the totality of the

18

circumstances.  In re Kestell, 99 F.3d 145, 148 (4th Cir. 1996)(citing In re Love, 957 F.2d 1350 (7th Cir. 1992)).  The Love court distinguished between the good faith analysis of § 1307(c) and § 1325(a)(3) stating that a § 1307(c) analysis is a "broad inquiry focusing on the fairness involved in the initiation of the Chapter 13 bankruptcy proceedings," where the § 1325(a)(3) analysis is " a more narrow inquiry focusing on the good faith with regard to the Chapter 13 plan."  Id. at 1360.  Finally, in determining whether a debtor has filed his petition in good faith for purposes of § 1325(a)(7), the court must determine whether under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of the bankruptcy code.  In re Bateman, 515 F.3d 272, 283 (4th Cir. 1982).

In Deans v. O'Donnell (In re Deans), 692 F.2d 968, 969 (4th Cir. 1982), the Fourth Circuit Court of Appeals set forth a non-exhaustive list of factors that may be considered but noted that a court must make its determination based on all militating factors, and that the totality of circumstances must be examined on a case by case basis in order to fairly apply the statute.  In re Abbas, 2007 WL 4556665, *5 (Bankr. E.D.Va. 2007)(citing In re Deans, 692 F.2d at 972).  In addition to the list of factors in the Deans case, a court should also consider the debtor's pre-petition conduct as part of its good faith analysis.  See Neufeld v. Freeman, 794 F.2d 149, 152 (4th Cir. 1986).

The debtor bears the burden of proof concerning good faith issues under § 1325 and the movant bears the burden of proof under § 1307(c).  See In re Abbas, 2007 WL 4556665, at *5 (quoting In re Delbrugge, 347 B.R. 536, 540 (Bankr. N.D.W.Va. 2006).  Because the good faith for cause test implicit in § 1307(c) is now codified at § 1325(a)(7) the burden rests upon the debtor for purposes of confirmation, and upon the movant for purposes of dismissal.

> **B.    The Bankruptcy Court did not Examine Tomer's Conduct by Conducting a Fact-intensive Inquiry that Considered the Totality of Circumstances as Was Required.**

The bankruptcy court's Memorandum and Order confirms that Romar's objection was on grounds that Tomer's petition was not filed in good faith, but it failed to conduct a thorough inquiry based upon the totality of circumstances in the case as was required.  Instead the bankruptcy court made its determination based upon the following considerations: (1) that the Trustee did not object to the confirmation of the plan on the grounds that the petition was filed in bad faith, (2) that the Trustee believed that the Debtor had adequately responded to the Romar's complaints concerning certain conduct outside bankruptcy that was inappropriate, and (3) that the Trustee noted that the Debtor's proposed plan met all of the "technical" requirements for a confirmable plan (R. 18, p. 2, ¶ 1). Additionally, the bankruptcy court ignored the fact that the burden of proof lies with the debtor to establish good faith for confirmation purposes and not with the Trustee.

Because the bankruptcy court applied an improper legal standard to its review of Tomer's bad faith under § 1325(a)(7), this Court should review this issue *de novo*.  In re Stanley, 224 Fed.Appx. at 345-346, 2007 WL 1026423 at *2 (quoting In re Missionary Baptist Foundation Of America, 712 F.2d at 209; see also In re Mercer, 246 F.3d at 402 ("[T]he clear error standard does not apply to findings of fact resulting from application of an incorrect legal standard.").

> **II.   The Bankruptcy Court Misapplied the Legal Standard in Finding that Tomer's Plan was Proposed in Good Faith.**

*A.    The Legal Standard under § 1325(a)(3) is a Totality of Circumstances Test and Tomer had the Burden of Proving that the Plan was Proposed in Good Faith.*

Section 1325(a)(3) of the Bankruptcy Code provides that the court shall confirm a plan if it has been proposed in good faith, but Congress has nowhere in the statute defined the term "good faith."  See Deans, 692 F.2d at 969.  Within the Fourth Circuit Court of Appeals, it has been expressly held that the a good faith inquiry under § 1325(a)(3) must encompass both the prepetition and post-petition conduct of the debtor.  Solomon v. Cosby (In re Solomon), 67 F.3d 1128, 1134 (4th Cir. 1995)(quoting Neufeld, 794 F.2d at 150.  In Deans and Neufeld, the Fourth Circuit Court of Appeals has set forth a non-exhaustive list of factors that may be considered when determining whether a debtor has proposed a plan in good faith[1].  Ultimately, "the totality of circumstances must be examined on a case by case basis."  Deans, 692 F.2d at 972.  The basic inquiry should be whether under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of the Bankruptcy Code.  See In re Chaney, 362 B.R. 690, 694 (Bankr. E.D.Va. 2007).  The debtor bears the burden of proving that a plan is proposed in good faith under § 1325(a)(3).  In re Delbrugge, 347 B.R. at 540.

*B.    The Bankruptcy Court did not Examine Tomer's Conduct by Conducting a Fact-intensive Inquiry that Considered the Totality of Circumstances as was Required.*

---

[1] This non-exhaustive list includes the percentage of proposed repayment to creditors, the debtor's financial situation, the period of time over which the creditors will be paid, the debtor's employment history and prospects, the nature and amount of the unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing the facts of the case, the nature of the debtor's pre-petition conduct that gave rise to the debts, whether the debts would be dischargeable in a Chapter 7 proceeding, and any other unusual or exceptional problems the debtor faces.  Neufeld, 794 F.2d at 152 (citing Deans, 692 F.2d at 972).

The bankruptcy court misapplied the legal standard in determining that Tomer had filed her plan in good faith.  While the bankruptcy court appeared to examine several issues concerning bad faith, its examination was misapplied because its consideration of the factors was based upon the presumption that if Tomer's Plan was technically sufficient there could be no bad faith in its proposal.  To the contrary, the "strict mechanical application of the means test does not necessarily satisfy the debtor's burden of demonstrating good faith in the proposal of their plans, including whether they are devoting sufficient income to their plan."  In re Edmunds, 350 B.R. 636, 648 (Bankr. D.S.C. 2006); see also In re Sellers, 285 B.R. 769, 773, fn. 4 (Bankr. S.D.Ga. 2001).  Simply complying with the technical requirements for confirmation of a plan, like the means test, calculation of disposable income, and best-interest-of-the-creditors test, mentioned by the bankruptcy court in its Memorandum Order, do not in and of themselves constitute the requisite totality of circumstances examination that it was required to make on a case-by-case basis in order to apply the law fairly. Furthermore, it is clear from the bankruptcy court's Memorandum and Opinion that it placed its reliance upon the Trustee's statements rather than requiring Tomer to meet her burden in proving that the Plan was filed in good faith.  The bankruptcy court makes no mention of Tomer's evidence or testimony as a basis for its decision.  Instead, the bankruptcy court relies heavily upon the opinion of the Trustee and the fact that the Plan meets certain technical requirements under the means test.  For these reasons, this Court should examine the issue of whether Tomer filed her Plan in good faith de novo.

*III.   Tomer's Pre-petition and Post-petition Actions Clearly Demonstrate that Both her Bankruptcy Petition and Plan Were Filed in Bad Faith.*

*A.   When Conducting the Totality of Circumstances Test Factors Listed in Dean and Neufeld Should be Evaluated as they Apply to the Facts of the Case at Bar.*

Courts making bad faith inquiries under § 1325(a) post-BAPCPA continue to rely upon the non-exhaustive list expressed in <u>Deans</u> and added to in <u>Nuefeld</u>.  This non-exhaustive list includes the percentage of proposed repayment to creditors, the debtor's financial situation, the period of time over which the creditors will be paid, the debtor's employment history and prospects, the nature and amount of the unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing the facts of the case, the nature of the debtor's pre-petition conduct that gave rise to the debts, whether the debts would be dischargeable in a Chapter 7 proceeding, and any other unusual or exceptional problems the debtor faces.  <u>Neufeld</u>, 794 F.2d at 152 (<u>citing</u> <u>Deans</u>, 692 F.2d at 972).  The Fourth Circuit Court of Appeals, in developing this list, emphasized that the totality of the circumstances surrounding the plan ought to be examined on a case-by-case basis in order to apply the statute.  <u>In re Chase</u>, 43 B.R. 739, 742 (D. Md. 1984).

*B.   Tomer has Demonstrated her Bad Faith through Several Pre-petition and Post-petition Actions.*

*1.   The Plan's proposed payment of Romar's claim is insignificant in light of the fact that the claim was incurred by Tomer's intentional misappropriation of Romar's trade secrets.*

Among the factors that should be considered, courts should determine whether a major portion of the claims sought to be discharged arise out of pre-petition fraud or other wrongful conduct and whether the chapter 13 plan

23

proposed to repay only a minimal portion of those claims.  Neufeld, 742 F.2d at 152-53.  In Tomer's case, her Plan only proposes to pay thirteen percent of Romar's claim.  Romar's claim arises out of Tomer's pre-petition intentional misappropriation of its trade secrets.  Tomer downloaded Romar's client data information to her personal Yahoo! account the day before she quit her job at Romar to begin working for its largest competitor, Commonwealth Home Health Care.  Tomer's actions were in gross disregard for the privacy rights of Romar's patient records.  In its Memorandum and Order, the bankruptcy court incorrectly stated that the Plan proposed to pay nineteen percent of the total claims amount.  This finding of fact was clearly erroneous because the Plan only proposes to pay thirteen percent of the total claims amount (R.11, p. 3, ¶ 4.A).  In the bankruptcy case of In re Herndon, 218 B.R. 821, 825, n. 5 (Bankr. E.D.Va. 1998), the court dismissed the debtor's bankruptcy case stating that debtor's proposed 36 month plan only provided for the payment of approximately six percent of an embezzlement claim, and noting that even if the plan was modified to extend the payment period to 60 months it would still only provide the minimal sum of thirteen percent of the claim.  "Such a nominal payment on a potentially nondischargeable claim is evidence of bad faith."  In re Herndon, 218 B.R. at 825; see Neufeld, 794 F.2d at 153; In re Oliver, 186 B.R. 403, 406 (Bankr. E.D.Va. 1995).  The court's dismissal in the Herndon case clearly demonstrates that it felt the debtor would not be able to overcome her bad faith even if she increased her plan repayment period from 36 months to the maximum 60 month repayment period.

In its Memorandum and Opinion the bankruptcy court stated as follows:

In Herndon, the creditor asserted that the debtor had embezzled funds, an act which would have given rise to a debt that would not have been dischargeable in a chapter 7 case, but would have

been dischargeable in a chapter 13 case. In 2005, however, the Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act, in which it amended the bankruptcy code to provide that certain additional kinds of debts are non-dischargeable in chapter 13. If the debt owed by the Debtor is one of those kinds of debts, then the debt will be non-dischargeable and the reasoning in <u>Herndon</u> no longer applies. If the debt owed by the Debtor is not one of those kinds of debts, then it may fairly be reasoned that Congress considered whether to make that kind of debt non-dischargeable in chapter 13, in which case it must be concluded that Congress does not believe that it constitutes an act of bad faith for a debtor to file a chapter 13 petition when such a debt is owed.

This finding is clearly erroneous. "Courts should not presume that amendments to the Bankruptcy Code alter past bankruptcy practices absent a clear indication from Congress of such intent." <u>In re Walker</u>, 99 F.3d 146, 148 (4th Cir. 1996)(quoting <u>In re Edmunds</u>, 350 B.R. at 649. Congress has given no such indication. Post BAPCPA, courts within the Fourth Circuit continue to uphold the validity of the <u>Deans</u> and <u>Neufeld</u> factors when evaluating the totality of circumstances. <u>In re Mark</u>, 336 B.R. 260, 266 (Bankr. D. Md. 2006), <u>In re Bateman</u>, 341 B.R. at 542; <u>In re Delbrugge</u>, 347 B.R. at 540. This Court should give weight to the fact that Tomer's misappropriation could be declared nondischargeable under a Chapter 7 bankruptcy case as embezzlement.

   2.   *This bankruptcy case involves a two-party dispute between Tomer and Romar and as such a case dismissal for lack of good faith is warranted.*

   The bankruptcy court erred in concluding that the two-party dispute factor is less important in involuntary cases than in voluntary cases. Two-party disputes have no place in bankruptcy because they violate the good faith prerequisite to invoke the bankruptcy court's equitable jurisdiction. <u>In re Shead</u>, 2008 WL 1995373, *3 (S.D. Tex. 2008)(citing <u>In re Anderson Oaks L.P.</u>, 77 B.R. 108, 112 (Bankr. W.D.Tex. 1987)). Numerous tribunals have dismissed Chapter 13 cases as bad faith filings when the Debtor's motivation

was to avoid payment of a singular debt.  <u>In re Virden</u>, 279 B.R. 401, 410
(Bankr. D.Mass. 2002); <u>In re Mattson</u>, 241 B.R. 629, 634 (Bankr. D. Minn.
1999); <u>In re Tornheim</u>, 239 B.R. 677, 686-87 (Bankr. E.D.N.Y. 1999); <u>In re
Peterson</u>, 228 B.R. 19 (Bankr. M.D.Fla 1998); <u>In re Ramji</u>, 166 B.R. 288, 2909
(Bankr. S.D.Tex. 1993).  In the case at bar, Tomer has repeatedly stated that
her only reason for filing the Petition was to avoid paying Romar's Judgment
(R.26, p. 42, ll. 18-25, p. 43, ll. 1-13, R.27, p. 7, ll. 188-190, p. 8, ll.
196-208).  Tomer's confession that she only filed her petition to impede
Romar's collection attempts clearly demonstrates her bad faith intention in
filing for bankruptcy relief.  <u>In re Fleury</u>, 294 B.R. 1, 8 (Bankr. D.Mass.
2003).

Tomer's only other substantial unsecured debts are to two insiders: (1)
her father-in-law who assisted her with the fraudulent transfer of her
Property and helped her obtain a loan so that she could buy a new Vehicle a
week before filing for bankruptcy, and (2) her uncle's law firm, Garrett &
Garrett, where her father also works as an employee.  The bill from Garrett &
Garrett was generated in contemplation of Tomer's bankruptcy case as is
evidenced by the date and nature of the bill (R.21, p. 2).  The bill is not
itemized and does not show the dates that work was performed, rather it is a
one page summary for work performed over the course of more than a year,
showing a total amount due of $68,300.  Tomer was unable to produce evidence
of any fee arrangement with Garrett & Garrett or any other billing statements
with the exception of the one prepared on the day she filed her bankruptcy
Petition (R.27, p. 24, ll. 652-658).  Garrett & Garrett's claim is nothing
more than an attempt by Tomer, with the aid and assistance of an insider, to
reduce the assets available to Romer's legitimate creditors.  In the
bankruptcy case of <u>In re Danville Emergency Physicians, P.C.</u>, Case No. 06-

61306-LYN (Bankr. W.D.Va. 2008) Judge Anderson ruled that the case involved a two party dispute and dismissed the case as a result.  In <u>Danville Emergency Physicians</u> there were several non-insider unsecured creditors beside the petitioner, but the petitioner's claim comprised more than 80% of the total of all claims.  In Tomer's case, Romar holds the largest claim and it comprises nearly 60% of all claims and more than 89% of the claims if the two insider claims mentioned are taken out of the equation.

Tomer's alleged debts to her father-in-law and to her uncle are debts to insiders and by her testimony were not a factor in her decision to file for bankruptcy protection (R.26, p. 42, ll. 19-22).  Tomer never intended to pay Romar for the damages she caused it.  By her own testimony, she expects to discharge all but a small fraction of what she owes to Romar (R.26, p. 43, ll. 22-23, p. 44, ll. 1-2).  Because Tomer's sole reason for filing her Petition was to thwart Romar's collection efforts, her case should be dismissed as a two-party dispute on grounds of bad faith.

3.    *Tomer committed an act of bad faith when she fraudulently transferred Property to her father-in-law with his aid and assistance to avoid Romar's judgment lien attaching to her Property.*

The jury verdict was rendered against Tomer on February 14, 2008, adjudging her guilty of the misappropriation of Romar's trade secrets, but the Judgment was not entered until April 7, 2008.  Immediately after the jury rendered its verdict, but before the Judgment was entered, Tomer fraudulently transferred her Property to her father-in-law to keep Romar from getting a judgment lien in her ownership interest (R.26, p. 36, ll. 3-25, R.27, p. 10, ll. 270-274, p. 20, ll. 542-554, p. 25, ll. 685-693).  Tomer made it clear at both the § 341 Meeting of Creditors and at the hearing held in October that she transferred the property with the intent to delay, hinder and defraud Romar in its attempts to collect the judgment debt from her.  It is clear

27

from the facts that Tomer and her husband had acquired the real property

prior to being married and that prior to transferring it to her father-in-

law, she owned a severable interest in the property.  Now, at Romar's

expense, Tomer enjoys the continued possession of the Property and allegedly

rents it from her father-in-law for $750 per month.

        4.    *Tomer committed an act of bad faith when she purchased a new*
*Vehicle within a week of filing her Petition.*

        Courts have denied confirmation of chapter 13 plans that propose to pay

for nonessential or luxury, secured assets, because these plans unfairly

discriminate against the debtors' unsecured creditors.  See In re McNeely,

366 B.R. 542, 549 (Bankr. N.D.W.Va. 2007); In re Zaleski, 216 B.R. 425, 432

(1997); In re Kasun, 186, B.R. 62, 63-64 (Bankr. E.D.Va. 1995).  Tomer

purchased a new Vehicle on May 22, 2008, knowing that she would be filing her

Petition shortly thereafter.  This is not an act of prudent bankruptcy

planning, it is a clear and obvious act of bad faith on the part of Tomer.

This Vehicle cannot be considered under the facts to be anything other than a

luxury item purchased on the eve of bankruptcy in order to reduce the amount

of money that she would otherwise have to pay to Romar.  Tomer's testimony is

that she purchased the new Vehicle because she thought she would not be able

to do so after the bankruptcy was filed.  Tomer's father-in-law cosigned this

loan for her (R.20).  Even though her father-in-law is a co-signor and

guarantor of the Vehicle note, he is not listed as a co-owner on the Vehicle

title (R.20).  Facts evidenced at hearings showed that Tomer already owned a

vehicle, that her husband was virtually unemployed and had no need of a

vehicle on a constant basis, that Tomer already had the use of a company

vehicle for any work purposes, and that the new Vehicle was not necessary to

an effective reorganization of the Debtor under her Chapter 13 plan.  The

Vehicle loan requires semi-monthly payments of $195 at 17.75% interest.  In addition there will be the normal costs of ownership associated with the Vehicle including insurance, maintenance, and fuel costs.  This is money that a good faith debtor would have applied toward paying creditors. The Vehicle purchase is part of an unrelenting effort on Tomer's part to reduce the assets available to legitimate creditors.

    *IV.   Tomer's bankruptcy case should be dismissed pursuant to 11 U.S.C. 1307(c) for her bad faith actions in filing her bankruptcy petition and plan.*

    Although § 1325(a) speaks to plan confirmation and does not explicitly mention petition dismissal, courts have authority under § 105 and § 1307(c) to fashion the appropriate remedy for plans that run afoul of the good faith requirements of § 1325(a).  In re Walker, 2008 WL 2559420 at *3, n. 1.  Among the causes that may produce a dismissal with prejudice is filing a bankruptcy petition in bad faith.  In re Shead, 2008 WL 1995373 at *2 (citing In re Russell, 348 B.R. 441, 447 (Bankr. S.D.Tex. 2006).  This is a case for dismissal rather than a mere denial of Tomer's Plan.  Tomer's pre-petition bad faith acts remove her from the class of individuals that federal bankruptcy law was created to protect.

<u>Conclusion</u>

    The United States Bankruptcy Court for the Western District of Virginia, Lynchburg Division premised its findings of fact on an improper legal standard or a proper one improperly applied in confirming Debtor's Plan.  Courts within the 4th Circuit are required to examine the totality of circumstances on a case by case basis when determining whether to deny confirmation or dismiss debtor's case for bad faith.  The court's examination must focus on whether under the circumstances the debtor abused the purpose,

spirit or provisions of the Bankruptcy Code.  It is the debtor's burden to establish that she acted in good faith in filing her petition and plan, and in this case, Tomer has not met her burden.  The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor.  Tomer is neither honest nor unfortunate and has forfeited any right she may have otherwise had to proceed with a chapter 13 bankruptcy case.  For the reasons stated herein, this Court should reverse the bankruptcy court's decision confirming Tomer's Plan and dismiss Tomer's bankruptcy case with prejudice for her bad faith actions in filing her petition and for her bad faith in proposing her chapter 13 plan.


Dated: April 17, 2009                    ROMAR ELEVATORS, INC.


                                         By Counsel


Counsel:

CLEMENT & WHEATLEY
549 MAIN STREET
P.O. BOX 8200
DANVILLE, VA 24541
(434) 793-8200
(434) 793-8436 facsimile


/s/ Darren W. Bentley
Darren W. Bentley, VSB# 48092


                              30

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on the 17th day of April, 2009, the foregoing Brief of Appellant was filed electronically with the U.S. District Court and was served on the following parties, electronically on those parties who are CM/ECF participants, and by U.S. Postal Service on those parties who are non-CM/ECF participants:

       Lewis E. Goodman, Jr., Esq.
       520 Piney Forest Rd
       Danville, VA 24540
       Counsel for Appellee;

       Rebecca Connelly
       Chapter 13 Trustee
       P. O. Box 1001
       Roanoke, VA 24005

                           /s/ Darren W. Bentley
                           Darren W. Bentley