IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| ROBIN GARRETT TOMER, | ) | Bankr. Case No. 08-61265 |
| | ) | |
|    Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ROMAR ELEVATORS, INC., | ) | |
| | ) | Civil Action No. 4:09CV0008 |
|    Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ROBIN GARRETT TOMER, | ) | |
| | ) | By: Jackson L. Kiser |
|    Appellee, | ) |     Senior United States District Judge |
| | ) | |
| REBECCA B. CONNELLY | ) | |
| | ) | |
|    Chapter 13 Trustee, | ) | |
|    Party in Interest. | ) | |

Appeal from the United States Bankruptcy Court

For the Western District of Virginia, at Lynchburg.

Hon. William E. Anderson, United States Bankruptcy Judge.

(Bankruptcy Case No. 08-61265)

Argued: June 29, 2009

Decided: July 14, 2009

**COUNSEL:** Darren W. Bentley, CLEMENT & WHEATLEY, Danville, Virginia, for

Appellant. Lewis E. Goodman, Jr., Danville, Virginia, for Appellee. Rebecca B. Connelly,

CHAPTER 13 TRUSTEE, Roanoke, VA, Party in Interest.

**OPINION**

KISER, District Court Judge:

Before me is the appeal from the United States Bankruptcy Court's February 6, 2009 Memorandum and Order confirming the Appellee's Chapter 13 bankruptcy plan. [Docket 1 – 18]. All parties, including the Chapter 13 Trustee, filed appropriate briefs and reply briefs prior to providing oral argument on June 29, 2009. I have reviewed the legal arguments, the facts in the record, and relevant legal precedence. In this appeal, I will determine whether Rebecca Garrett Tomer's Chapter 13 petition and plan were filed in good faith pursuant to 11 U.S.C. §§ 1325(a)(3), (a)(7). For the reasons stated below, I will **REVERSE AND REMAND** this case to the bankruptcy court to provide specific findings of fact as to whether Robin Tomer's Chapter 13 petition for bankruptcy petition was entered in good faith.

Tomer was convicted of misappropriation of trade secrets on February 14, 2008 in the net amount of $171,000. Prior to her May 30, 2008 petition for bankruptcy protection, Tomer engaged in various questionable actions causing the good faith of her petition to come into question. Specifically, Tomer sold real property to her father-in-law and took out a loan to purchase a new automobile. In addition, her bankruptcy petition states various family-related debt ($68,300 to her uncle's law firm, and $26,543.34 in miscellaneous debt to her father-in-law).

Romar Elevators, Inc. ("Romar") filed an objection to confirmation of the Chapter 13 plan on the grounds that neither the petition nor the plan was filed in good faith. The bankruptcy court heard testimony from Tomer, where she admitted to her intent to avoid paying the Romar debt and conceded her motivation in filing bankruptcy was solely to discharge the Romar debt. At the October 1, 2008 and December 3, 2008 hearings, the bankruptcy court heard testimony,

2

Case 4:09-cv-00008-JLK   Document 15-1   Filed 07/14/09   Page 2 of 13   Pageid#: 418

examined evidence, and was presented with legal argument. On February 6, 2009, the bankruptcy court issued a Memorandum and Order in which it overruled the objections to confirmation, and ordered the plan confirmed. Romar appealed.

Romar contends that the bankruptcy should not have confirmed the Chapter 13 petition and plan because it did not use the correct legal test to consider the Chapter 13 petition and plan at bar. Romar argues the bankruptcy court should have considered Tomer's bad faith under the totality of the circumstances test separately for its petition and plan analysis. Specifically, Romar argues:

1. Debtor was not providing for all of her disposable income to be submitted for payments under the plan;

2. Debtor was paying for luxury items in the form of a Toyota Yaris vehicle, and

3. Debtor sold property prior to filing bankruptcy that, had it not been sold prior to the petition, would have warranted a sale under 11 U.S.C. § 363.

For the reasons that follow, I will reverse and remand the judgment of the bankruptcy court.

**I**

From February 2006 until March 23, 2007, Robin Garrett Tomer (the "Debtor") was employed by the appellant, Romar. In March 2007, she ended her employment with Romar and subsequently transferred proprietary information from Romar to her personal computer. Romar filed a civil suit against her and obtained a judgment in its favor for misappropriation of trade secrets. The jury rendered its verdict on February 14, 2008. The judgment order was entered on April 7, 2008 in the net amount of $171,000.00 ($175,000.00 less an offset of $4,000.00).

During this time, Robin and Adam Tomer jointly owned certain real property. The assessed value of the entire parcel of real property was $71,700.00 and was subject to a mortgage lien in the amount of $90,671.70. In March 2008, Robin and Adam Tomer sold the property for the price of $91,000.00 to Adam Tomer's father, John Tomer. Robin and Adam Tomer had no equity in the home and the sale price was all virtually used to satisfy the lien.

On May 22, 2008, Robin Tomer entered into a loan with Piedmont Credit Union for the purchase of a new Toyota Yaris vehicle. The purchase price and loan amount were $15,500.00. The loan requires monthly payments of $390.00.

On May 30, 2008, Robin Tomer filed a petition for Chapter 13 bankruptcy. In the Chapter 13 Statement of Financial Affairs, and in her testimony during her case, Tomer revealed the pre-petition transfer of her interest in real property. On her Chapter 13 plan and schedules, Tomer revealed the debt to Piedmont Credit Union, and the date of its occurrence. The Debtor scheduled a total of $286,481.00 in general unsecured debt, of which Romar claims $171,000.00 – representing 58% of the total scheduled unsecured debt. Of the total unsecured debt, Tomer listed a debt to her uncle's law firm in the amount of $68,300.00 and a debt to her father-in-law in the amount of $26,543.34. These two "family" claims represent 33% of the total scheduled general unsecured debt. Subrogating these two "family" claims to the rest of the claims shows that Romar's claim consists of 89% of the debt.

Romar filed an objection to confirmation of the Chapter 13 plan on the grounds that neither the petition nor the plan was filed in good faith.[1] The Chapter 13 Trustee ("Trustee") filed an objection to confirmation of the plan. Romar also filed a complaint to determine the dischargeability of its debt, which is pending the outcome of this appeal. Romar filed its

---

[1] Romar is the only objecting creditor.

objection to confirmation of the Debtor's plan alleging the plan was not proposed in good faith and cited three grounds. Specifically:

1. Debtor was not providing for all of her disposable income to be submitted for payments under the plan;

2. Debtor was paying for luxury items in the form of a Toyota Yaris vehicle, and

3. Debtor sold property prior to filing bankruptcy that, had it not been sold prior to the petition, would have warranted a sale under 11 U.S.C § 363.

Originally, the Trustee objected to confirmation, pursuant to 11 U.S.C. §§ 1325(a)(3), (a)(7) and (b)(1), on the grounds that the plan did not provide for enough of the Debtor's projected income to be paid toward payments to unsecured creditors. The Debtor amended the plan on August 8, 2008. The amended plan increased the funding by $16,438.00. October 1, 2008, the Trustee reported that the amendments to the plan resolved her objections to confirmation but had not resolved the objections of Romar. The court heard testimony of the Debtor. The Debtor was examined, and cross examined. While testifying, the Debtor admitted her intent to avoid paying the Romar debt and conceded her motivation in filing bankruptcy was solely to discharge the Romar debt.[2] She also revealed that many of her other creditors are family members, and that the Toyota was a necessary purchase[3] if she was going to be able to earn money to pay off her Chapter 13 plan.[4] While the Debtor submitted certain exhibits to the court, no evidence was presented by Romar or the Trustee.

---

[2] Tomer testified at the Creditor's Meeting, "[m]y concern was that there would be a lien placed on half of the house so for 20 years and then it could be renewed after another 20 years. So basically I couldn't fix up my home or sell my home and I didn't want to move I wanted to protect where I lived and so that it why I made that decision." (Transcript of 11 U.S.C. §341 Meeting, p. 25).

[3] Tomer testified at the Creditor's Meeting, "I knew I was getting ready to be locked into a five year bankruptcy plan where I could not incur any debt so we purchased the absolute cheapest… most fuel efficient car that we could... And the car that we have currently has over 100,000 miles on it. So we didn't know if that breaks down I can even incur debt to fix a motor or anything. (Transcript of 11 U.S.C. §341 Meeting, p. 27).

[4] Specifically, the Debtor's uncontested evidence showed:

5
Case 4:09-cv-00008-JLK    Document 15-1    Filed 07/14/09    Page 5 of 13    Pageid#: 421

At the hearing on October 1, 2008, Romar orally moved to dismiss the case on the grounds that the petition was not filed in good faith and orally objected to confirmation of the plan on the same grounds. The bankruptcy court heard the matter again on December 3, 2008 where no additional evidence was presented to refute the Debtor's testimony or to call into question her credibility. The bankruptcy court was satisfied with the accuracy of Tomer's testimony.

On February 6, 2009, the bankruptcy court issued a Memorandum and Order in which it overruled the objections to confirmation, and ordered that the plan is confirmed. The bankruptcy court addressed the Debtor's actions, taking into account the strong supportive testimony and evidence provided by the Trustee with regard to the Chapter 13 plan. The bankruptcy court did not conclude that the Debtor's actions demonstrated misconduct during the case; indeed the court observed that the actions benefited Romar rather than delayed Romar. Romar appealed the decision. However, the Memorandum and Order did not provide analysis as to whether the petition was filed in good faith. Instead, the bankruptcy court concluded that the plan was proposed in good faith.

---

1. the vehicle was necessary for transportation to and from her employment;
2. the sale of her interest in real property was for a fair market value even if it was motivated out of an effort to prevent the docketing of a judgment lien by Romar;
3. had the sale not occurred, no additional payments would be required to be made to creditors in order to achieve plan confirmation;
4. had the property not been sold pre-bankruptcy, a bankruptcy trustee would not have a purpose to sell the property in the bankruptcy case as no equity existed to result in any distribution to creditors upon sale;
5. the Debtor's household income was not understated, and
6. the Debtor's household expenses were not overstated.

## II

Pursuant to 28 U.S.C. §158(a)(1), I have jurisdiction to hear the appeal on the issue of whether the bankruptcy court erred in finding that Robin Tomer's Chapter 13 bankruptcy plan and petition had been filed in good faith.

The District Court "reviews the bankruptcy court's legal determinations *de novo* and its factual findings for clear error." In re Official Committee of Unsecured for Dornier Aviation, Inc., 453 F.3d 225, 231 (4th Cir. 2006); Kieliseh v. Edue. Credit Mgmt Corp. (In re Kieliseh,) 258 F.3d 315, 319 (4th Cir. 2001). In cases where the issues present mixed questions of law and fact, the court will apply the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts. Gilbane Building Company v. Federal Reserve Bank of Richmond, 80 F.3d 895, 905 (4th Cir. 1996). Whether a petition was filed in good faith is a question of fact that is reviewed for clear error. In re Metz, 820 F.2d 1495, 1497 (9th Cir. 1989); Fed. R. Bankr. P. 8013. A bankruptcy court's findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Fed. R. Bankr. P. 8013; Farouki v. Emirates Bank Int'l, 14 F.3d 244, 250 (4th Cir. Va. 1994); accord Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 251 (4th Cir. 1987).

## III

Romar has established five issues for appeal, however all five are closely related. Therefore, the sole issue for which I have jurisdiction to consider on appeal is whether the

bankruptcy court erred in finding that the Chapter 13 plan and petition met the good faith requirements of 11 U.S.C. §§ 1325(a)(3)[5] and (7)[6].

Specifically, Romar contents that the bankruptcy court erred by placing its reliance upon the Trustee's interpretation of the facts of plan construction rather than properly using the totality of circumstances test to determine if the petition and plan, separately, were made in good faith. As a result of the bankruptcy court's error, Romar further contends that this Court should conduct a *de novo* review and examine the totality of circumstances surrounding the Debtor's bankruptcy filing and proposed plan. However, in the alternative Romar challenges the bankruptcy court's factual findings for *clear error*. Lastly, Romar contends the error was not harmless because the Debtor is using the bankruptcy venue as a means to delay, hinder, and defraud Romar from the collection and enforcement of its Judgment.

According to the standard of review, detailed previously, I am bound by the factual findings of the bankruptcy court, so long as the bankruptcy court applied the correct legal test. As such, I find the bankruptcy court correctly applied the totality of the circumstances test to Tomer's Chapter 13 plan, finding it satisfied 11 U.S.C. § 1325(a)(3). However, the bankruptcy court's opinion, as it is now structured, does not discuss the good faith of Tomer's Chapter 13 petition, in accordance with 11 U.S.C. § 1325(a)(7). Since the correct test was used for the plan, and there was no clear error in the bankruptcy court's factual findings, but the opinion lacked any analysis with regard to the petition, I will not review the case *de novo*, but will instead reverse and remand to the bankruptcy court to make a factual finding regarding the bankruptcy petition according to 11 U.S.C. § 1325(a)(7).

---

[5] 11 U.S.C § 1325(a)(3) provides that the court shall confirm a plan if it has been proposed in good faith.

[6] 11 U.S.C. § 1325(a)(7), adds to the plan confirmation requirement that "the action of the debtor in filing the petition was in good faith."

# IV

Tomer's actions and intent surrounding her filing a Chapter 13 petition must be analyzed by the bankruptcy judge to determine if it was made in good faith, because failure to make a bankruptcy petition in good faith would remove her from the class of individuals federal bankruptcy law was created to protect. The obligation of good faith is imposed on the debtor at two stages in a Chapter 13 proceeding; first, the debtor must file the petition for Chapter 13 bankruptcy in good faith, and second, the debtor must file the Chapter 13 plan in good faith. In re Smith, 286 F.3d 461, 465 (7th Cir. 2002); see also In re McFadden, 383 B.R. 386, 388-389 (Bankr. D.S.C. 2008), and In re Bowen, No. 07-05485, 2008 Bankr. LEXIS 16, at *6 (Bankr. D.S.C. Jan. 9, 2008). An assessment is necessary to determine, under the totality of the circumstances, if there has been an abuse of the Bankruptcy Code provisions, as well as of the purpose or spirit of a Chapter 13 case. Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982).

Since enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, there has not been much case law detailing how the courts are to analyze 11 U.S.C. 1325(a)(7), but one court in the Fourth Circuit and many in other circuits have used the same standards applied § 1307(c). In re Bland, No. 06-1159, 2008 Bankr. LEXIS 1331 at *8 (Bankr. N.D. W. Va. May 6, 2008) ("a court's determination to dismiss a petition as being filed with a lack of good faith 'is a broad inquiry focusing on the fairness involved in the initiation of Chapter 13 bankruptcy proceedings.'") (citing In re Love, 957 F.2d 1350, 1360 (7th Cir. 1992)). No one factor is controlling in determining whether a Chapter 13 petition has been filed in good faith. In re Kazzaz, 62 B.R. 308, 312 (Bankr. E.D. Va. 1986). Factors that the Love court considered when making a § 1307(c) good faith determination, under the totality of the circumstances surrounding a bankruptcy petition, included:

9

> "the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." In re Love at 1357.[7]

Good faith in filing a petition is separate and distinct from the concept of good faith required in connection with proposing a plan. It is clear from the factors used for a §1325(a)(3) and a §§ 1307(c) or 1325(a)(7) analysis that a court must use a different focus.

In this case, the bankruptcy court made its determination of the petition's good faith based on the Trustee's assessment that the plan was technically sound and therefore, made in good faith. This blurs the proper duel analysis into a single determination that imbues itself on the question of whether the petition was filed in good faith. The Trustee is a trustworthy source with sophisticated technical knowledge of Chapter 13 plan construction. However, the technical sufficiency of a Chapter 13 plan does not necessarily satisfy good faith in filing a bankruptcy petition. Further, as stated above, bankruptcy law may use similar criteria to determine good faith in both the petition and plan, but the scope is different. It is not surprising that the petition test is broader and more subjective since the plan test assumes the former has already been met and the only question remaining is goof faith in proposing a feasible plan. Therefore, the first test cannot be satisfied by the second, even when using similar criteria, nor can the first test analysis be argued away as harmless error since the tests' scopes are fundamentally different.

---

[7] Note that some factors are similar, but some are quite different from the non-exclusive list used to consider a § 1325(a)(3) claim, which are:

> "the percentage of proposed repayment, the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor." Neufeld v. Freeman, 794 F.2d 149, 152 (4th Cir. 1986) (citing Deans, 692 F.2d at 972).

Romar denotes various circumstances that relate to the Debtor's good faith in petitioning for bankruptcy, which occur at Romar's expense:

1. But for "family" debt, this is a essentially a two party dispute that has no place in Chapter 13 bankruptcy where unsecured creditors will ultimately only receive a fraction of the debt;

2. Tomer continues to enjoy possession of the real property sold to her father-in-law after the state court jury verdict but before the Judgment was entered to prevent a judgment lien;

3. Tomer stated numerous times that her only motive for filing for Chapter 13 was to prevent or skirt payment to Romar;

4. Tomer drives a new vehicle, purchased with a car loan obtained eight days before filing for Chapter 13, despite already owning a motor vehicle.

It was insufficient for a bankruptcy court to determine a petition's good faith by finding the plan was proposed in good faith. The enrichment of the Debtor's family and herself while anticipating filing for Chapter 13 reorganization is a compelling argument by Romar, and appropriate for the petition's good faith determination but not for the plan.[8] The debtor's intent is central to determining the good faith of a petition but immaterial when considering plan confirmation. In re Rodriguez, 248 B.R. 16, 18 (Bankr. D. Conn. 1999) ("[w]henever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives.")(citing In re Waldron, 785 F.2d 936, 941 (11th Cir. 1986)). The prudence and tangency of a new automobile to the petition filing purchase is relevant to the petition's good faith, but the purchase need only be viewed as reasonable under plan good faith examination.[9] These are but a few of the numerous factors the

---

[8] Looking at how the plan was effected by the in-family real property transfer, personal loan, and attorneys fees is a completely different question than whether they are evidence of potential bad faith dealings in anticipation of filing the Chapter 13 petition.

[9] Under 11 U.S.C. § 1325(b), plan confirmation, the debtor's disposable income is determined after calculating the debtor's reasonable and necessary expenditures.

court may and should examine, *sua sponte*, to determine whether Tomer exercised good faith in even petitioning for bankruptcy.

# V

Romar is understandably frustrated over the outcome of the case below as the innocent victim of Tomer's underlying tortious misconduct. They further believe the bankruptcy court's decision was in error as to the petition, at further cost to Romar. I agree. Tomer engaged in conduct giving rise to a judgment against her for misappropriation of trade secrets, then sold property to her father-in-law, purchased a new second family car, employed her uncle's law firm, and filed bankruptcy with the primary motive to avert the judgment's payment to Romar. These facts surely demonstrate the need for serious appraisal as to whether Tomer petitioned for Chapter 13 bankruptcy in good faith, under the totality of the circumstances.

The bankruptcy court satisfactorily found, based on a totality of the circumstances, that the Chapter 13 plan demonstrated good faith. However, this holding - as to the plan - does not satisfy a finding regarding the petition. The good faith analysis as to the petition is broader in scope with a different focus than that of the plan, which centers mainly on fairness and feasibility. The court must determine if the debtor should even have petitioned for bankruptcy before analyzing the plan itself, and it cannot imbue the findings of the latter on the former. The bankruptcy court must consider the facts, circumstances, testimony, and evidence before it to determine whether the Chapter 13 petition of Robin Tomer was filed in good faith.

For these reasons stated previously, I will **REVERSE** the opinion of the bankruptcy court and **REMAND** for the specific finding of fact as to whether Robin Tomer's Chapter 13 petition for bankruptcy petition was entered in good faith.

An appropriate *Order* will be entered.

The Clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 14th day of July, 2009.

                                                s/Jackson L. Kiser
                                                Senior United States District Judge